## ROBERTS *v.* SMITH.

1. A purchaser at a public sale of land by an administrator will not be relieved of liability because he was under the impression at the time of the bidding that a different tract of land was being offered for sale, when neither the administrator nor other party interested in the sale was responsible for such erroneous impression, and the purchaser by the exercise of the slightest diligence could have avoided his mistake.

2. In case a purchaser at an administrator's sale refuses to comply with his bid, where the administrator elects to resell the land at the purchaser's risk, he should do so at the earliest practicable time.　Ordinarily, if the purchaser repudiates his bid before the crowd disperses and within the legal hours of sale, the second sale should occur on the same day; but where the purchaser refuses to comply with his bid because of a contention that he is not liable thereon on account of having bid on the land through a mistake that another tract was being sold, and, in response to the administrator's offer to resell at his risk, makes a reply authorizing an inference that he declines the administrator's offer, and the administrator advertises the sale to occur on a sale day 60 days after the first sale, it is for the jury to say whether the administrator, under these and other attendant circumstances, acted with reasonable promptness, so as to make the purchaser liable for any deficiency in the second sale.

　　　　　　　　　OCTOBER 12, 1911.

Complaint.　Before Judge Lewis.　Jones superior court.　October 18, 1910.

　*E. T. Dumas* and *Hardeman, Jones, Callaway & Johnston,* for plaintiff.

　*J. B. Jackson* and *Johnson & Johnson,* for defendant.

EVANS, P. J.　J. D. Roberts, administrator of W. H. J. Wood, brought his action against J. W. Smith to recover the difference

in the amount of a bid made by the defendant on certain land at an administrator's sale and the actual price received by the administrator at a resale of the same property two months later. After the plaintiff had submitted his evidence, a nonsuit was granted, and he excepts.

It appeared from the evidence that on the first Tuesday in November, 1908, the administrator, after legal notice, exposed for sale certain lands of his intestate, being advertised as lots Nos. 1, 2, and 3, and each separately described in the advertisement. Lot No. 2 was first offered for sale. Then lot No. 3 was offered for sale, and the defendant appeared at the sale, began to bid thereon, and it was finally knocked off to him for the sum of $1,510. The auctioneer then proceeded to sell lot No. 1, when the defendant informed him that he had just purchased that lot. The auctioneer replied that he was mistaken, and that he had bid in lot No. 3; whereupon the defendant immediately told the auctioneer to sell it again, as he did not buy lot No. 3—that he had bought lot No. 1, the description of which had just been read by the auctioneer. After this conversation the defendant approached the administrator and said that he did not want lot No. 3, and that he wanted him to sell it, to which the administrator replied, "I will sell it at your risk." The defendant said, "Risk nothing." Thereupon the administrator said: "I have no right to resell the lot. It has been bid off and knocked down." While the sale of lot No. 3 was in progress, the auctioneer heard a conversation between one of the bidders and his brother. When the bids had reached $1,350, the brother remarked to the bidder, "Quit, that is high enough," to which he replied, "I think he [the defendant] thinks he is bidding on the land next to the station, and I am going to make him pay $2,000 for it." The administrator afterwards saw the defendant and inquired of him if he was going to take the land; the defendant replying: "No; I wish, Dawson [the administrator], you would get the Wood boys to take it off my hands." The administrator readvertised the property for sale on the first Tuesday in January, 1909, and sold it on that day for $1,050, and the difference between the first and last bid was $460, with the additional sum of $10.50, the cost of resale. It was admitted that the orders of sale and resale, and the advertisements, and the price the land brought at the resale, were as alleged, and legal in all respects.

1. The defendant contends that under this evidence he was not liable upon the first sale, for the reason that he bid on the land under a mistake of fact that a different lot was being offered for sale. If the party by reasonable diligence could have knowledge of the truth, equity will not relieve. Civil Code (1910), § 4581. No pretense is made that the administrator, or any one interested in the sale of the land, said or did anything which induced the defendant to bid upon the lot of land. The land was accurately described by boundaries, and the different lots had entirely different boundaries. The slightest diligence on the part of the defendant when he began to bid would have disclosed the particular tract which was being cried by the auctioneer. Instead of making inquiries or informing himself as to the particular lot of land which was being sold, he boldly rushed into the bidding and bid upon it with the assurance of one who knew what he was doing. The evidence disclosed that the bidding was sharp and competitive. It is true that the other bidder testified that he observed from the expression upon the defendant's face that he was under the impression that he was bidding on lot No. 1. Still the other bidder said nothing to encourage the mistake, and bid with the full knowledge that, if the land was knocked off to him, he would be bound by his bid. The last bid before it was knocked off to the defendant was within ten dollars of the final bid, and this bidder would have been liable to the estate for the amount of this bid. To relieve the defendant of the consequences of his bid because of his alleged mistake would be to grant him absolution, when he had not exercised the slightest degree of diligence to protect himself, and occasion loss to the estate of the last bid preceding his. Civil Code (1910), §§ 4581, 4571.

2. The defendant further urges, as a reason why the plaintiff should not prevail, that the administrator failed to offer the land for resale on the same day when he informed the administrator of his mistake and requested a resale. When a purchaser at administrator's sale refuses to comply with the terms of the sale when requested so to do, he shall be liable for the amount of the purchase-money; and at the option of the administrator he may proceed against such purchaser for the full amount of the purchase-money, or resell the real estate and then proceed against the first purchaser for the deficiency arising from such sale. Civil Code

(1910), § 6071. If the administrator elects to resell the land at the purchaser's risk, he should offer it for resale as soon as practicable. If the bidder on the day of sale refuses to comply before the crowd disperses and the hours of sale terminate, that day is the proper time to resell; if that cannot be done, just as soon as the property can be readvertised, after notice of refusal to comply with the terms of the sale. *Saunders* v. *Bell,* 56 *Ga.* 442. The administrator cannot delay an unreasonable time, so as to speculate at the risk of the purchaser; nor, on the other hand, is there any cast-iron rule that he should resell the property on the same day. The purchaser in the present case depends, first, upon the ground that he is not bound by the first sale, and, secondly, that the administrator should have resold the property on the same day after notice of his repudiation of the sale. The last defense involves the idea that he was bound by his purchase in the first instance; and if nothing more appeared in this case than the mere request to the administrator to resell the property on the day of the first sale, and that the crowd had not dispersed and the hours of sale had not terminated, there would be considerable force in the contention; but when the defendant approached the administrator, upon discovery that he had bid upon lot No. 3, and requested a resale of it, the administrator proposed to resell it at his risk. The purchaser's reply was, "Risk nothing," which, according to his other statements, could only mean that he was not bound in the first instance, and therefore he did not purpose to pay the deficiency in case of a resale. Under such circumstances the administrator was entitled to time to look into the matter. He allowed one month to elapse before inserting an advertisement for the next sale. When we come to consider that the law requires sales to occur on the first Tuesday in the month, after previous advertisement for four weeks, the time between the first sale and the insertion of the advertisement of the second sale may or may not have been sufficient for the administrator to have complied with the law in this respect. At all events it would be for the jury to say as to whether his failure was such a lack of diligence as to relieve the first purchaser of liability for the deficiency between the first and second sales.

For these reasons, we think the court should not have withdrawn the case from the jury by judgment of nonsuit.

*Judgment reversed. Beck, J., absent. The other Justices concur.*